May it please the court, I'm Charles Nickel appearing for the petitioner, Dara Em. This is a case, a Cambodian asylum case, which the Board of Immigration Appeals issued a summary dismissal of, a decision without opinion. The immigration judge made a divided credibility finding. He was a difficult witness. He came over here, he was born in 1980, during the time of the Vietnamese incursion into Cambodia to attack the regime of Pol Pot and the Khmer Rouge. He spoke of violence at the time that he was there where people would come in and rape women and steal and disturb the villages. His father, he said, belonged to what he called the Hun Sen, but that would just be the government fighting against the Khmer Rouge. Everybody knows the Khmer Rouge were a terrible group that terrorized the country, but why isn't it different now? Well, you know, at the time he came here in 1997, and although it's not really stated in the testimony, at the time he came here the country was in the middle of a war. They talk about him safely relocating to Phnom Penh. At that time, the capital was under siege. The prime minister at the time of the hearing, Hun Sen, was leading a coup. And both provinces which he talked about living in, Battambang province and Phnom Penh, were war zones. Now, according to the State Department, at the time of the hearing in 2001, they said that the Khmer Rouge were not a political factor anymore. However, given his family's, his father's history of siding with the government against the Khmer Rouge, and the fact that the Khmer Rouge actually burned down their home. But how does that apply when the Khmer Rouge, I believe, is just operating in one small part of the country? Well, I mean, there's also the issue of past persecution in this case, too. Right. The question is whether, assuming past persecution, whether the changed country conditions have overcome that presumption. I think that's the... Well, I mean, there is still, the Khmer Rouge does exist. And his burden is to show that there would be a reasonable possibility. We're not talking about above 50 percent. It could be, as Cardoso Fonseca, the Supreme Court, said that it could be a 1 in 10 possibility. Given what, you know, and looking at the organization we're dealing with here, too, the Khmer, probably only a couple of regimes, the Khmer Rouge, perhaps, or the group Sindaro-Luminoso in Brazil, in Peru, where, you know, contact with them is potentially lethal. If we were to concede for the purpose of argument that at the time of these hearings, he did have a, there was past persecution, and that he had a reasonable fear of future persecution, today they've installed a new king or whatever the monarch's name is there. Shouldn't we be sending it back for that kind of reconsideration? Well, yes. I think it could be reconsidered based upon the changed circumstances to see if he does have fear at this time. One of the problems with the, also the Board's decision, it was a summary decision. This Court has upheld that kind of decision in other discretionary applications. But for asylum, there's carved out a particular, it's the one area of discretionary relief which judicial review, this Court still maintains. What we do is simply go to the immigration judge's opinion as being the last, the last reasoned opinion is the immigration judge's opinion, and that's what we're looking at. That's correct. But one of the problems with the summary affirmance also, it only goes to the conclusions, or the legal conclusion. It doesn't necessarily mean that the Board, in reviewing it, agreed with all of the reasons. And I think for asylum, especially where there is a credibility issue, that the Board has to say we've reviewed the matter and this is what we find. Simply rather than just saying we're affirming the decision without opinion. You know, there have been, even though the petitioner in this case was not, you know, taken into custody, he was not physically abused, this Court in Gonzales-Neira has talked about there being past persecution where a person's, in that case a proving case in which a person was subjected to threats over a long period of time, had their business, was subject to extortion and loss of his business. And in this case, he had been subject to threats of recruitment, in arson in which the home was burned. And given the nature of the Khmer Rouge, I think that he did have certainly a reasonable fear of persecution. And it should be on a political opinion, or an imputed political opinion, that the Khmer Rouge would believe that he shared the same opinion as his father. And that was the reason that he refused to comply with their recruitment effort. If the Court would reserve a few minutes for rebuttal. Yeah, I just would like to reserve the last time for rebuttal. Thank you. May it please the Court. My name is Luis Perez. I represent the Attorney General, Your Honor. Your Honor, there is really no evidence that the Khmer Rouge imputed to Mr. M an adverse political opinion based on his father's prior membership in the Hun Sen Army. Mr. M did testify that they disliked him on account of that. But no harm resulted as a result of that. Specifically, Mr. M testified that he was threatened. That if he did not join the Khmer Rouge, he would be killed. Now, he also testified that this was the standard operation procedure of the Khmer Rouge. They did that to everyone in those villages. On page 61 of the administrative record, he testifies that they tried to recruit many in the village. So based on that threat, the evidence in the record does not compel that Mr. M was imputed an adverse political opinion. It simply concludes that or substantial evidence. This is substantial evidence that he was threatened simply because he refused to join them. And that is really yes. What's the implication from the refusal to join? Excuse me? What is the inference one would draw from the refusal to join? Didn't the Khmer Rouge believe they're either with us or against us? Well, that is an inference, but there is no evidence that that inference was made. And there's also substantial evidence that that inference was not made. And the burden here is on the petitioner to establish that the record compels that inference, not that that inference is possible. And in this case, because the Khmer Rouge basically tried to recruit people into their ranks, that doesn't establish a motivation, a political motivation on doing that. For example, not only he refused to join the Khmer Rouge, his father also refused to join the Khmer Rouge. Nothing happened to them. So the membership of his father in the Hun Sen army really plays no part in his testimony, other than saying that they disliked me because my father's prior membership in the Hun Sen's army. Another point, Your Honor, is the arson that took place in his house in the Patangan province, it took place and he testified, I think it's on page 74 of the administrative record, that they burned his house because his family was poor and they were unable to give them money. So that was the reason. And that also was the standard operating procedure of the Khmer Rouge in the Patangan province. So that's why the immigration judge said, even if I find you credible with respect to that some armed group threatened your family, you have not established the on-account of problem to establish eligibility for asylum. With respect to the well-founded fear of future persecution, the State Department report is pretty clear. And that State Department report was before the immigration judge. And the immigration judge made reference to the State Department report in his opinion. The Khmer Rouge plays no part. And even the profile for asylum, which is a little bit older, it's a 1998 document, states that the Khmer Rouge influence was limited to those provinces in Cambodia close to the Thai border. That's why, for example, he experienced no harm during the about four years that he lived in Phnom Penh, the capital of Cambodia.  Taking into account the 1998 State Department profile, that still said that the Khmer Rouge had some influence in Cambodia. And again, Your Honor, his parents continued to live there. And there has been no evidence of further threats or of any harassment. So based on this record, the evidence provides substantial evidence for the immigration judge's decision. And there is clearly no evidence that compels another inference. Thank you, counsel. Well, considering the Khmer Rouge killed approximately 2 million people who they determined they did not like or who were from cities or had remedial education, it's certainly very dangerous to be singled out as someone that the Khmer Rouge does not like. I think it would be appropriate for the case to be, you know, given that there have been since the time of the immigration judge's decision, changes in the government, we now presumably have a constitutional monarchy, that it would be good to have the case remanded for a second opinion as to... Yes, I just looked at that. I mean, the IJ didn't make any specific findings on changed country conditions. He just simply found no past persecution and therefore no well-founded fear, right? Right. Yeah. And so I think it would be appropriate... So if we credit the past persecution, we remand for determination whether that's rebutted by changed country conditions. Correct. And I think there is a basis for past persecution. At least in terms of the group that we're dealing with and the actual events that took place. Well, it's a little bit more difficult because, you know, we rejected a strict forced recruitment standard. In other words, if one is subject to forced recruitment, that doesn't necessarily equate to past persecution on account of a political opinion. The Khmer Rouge is slightly different, though, because it's not simply join our army. It's a... They did have more of a black and white situation. Yes. All aspects of life. And, in fact, any infraction, there was only one form of punishment during the time from 1975 to 1979 when they had complete control of the country. Yeah. So... Okay. Thank you. Thank you for your argument. The case just heard be submitted. We thank you all for your arguments this morning. And the court will be in recess. All rise. This court will be in recess. Thank you. Thank you.
judges: B. Fletcher, Noonan, Thomas